1   JON D. MEER (State Bar No. 144389)
    jmeer@seyfarth.com
2   SIMON L. YANG (State Bar No. 260286)
    syang@seyfarth.com
3   **SEYFARTH SHAW LLP**
    2029 Century Park East, 35th Floor
4   Los Angeles, California  90067-3021
    Telephone:   (310) 277-7200
5   Facsimile:    (310) 201-5219

6   LORIE E. ALMON (*admitted pro hac vice*)
    lalmon@seyfarth.com
7   **SEYFARTH SHAW LLP**
    620 Eighth Avenue, 32nd Floor
8   New York, New York  10018
    Telephone:   (212) 218-5500
9   Facsimile:    (212) 218-5526

10  Attorneys for Defendant
    THE PRUDENTIAL INSURANCE
11  COMPANY OF AMERICA, INC.

12              **UNITED STATES DISTRICT COURT**

13             **CENTRAL DISTRICT OF CALIFORNIA**

14                    **WESTERN DIVISION**

15  DOMINIQUE OSBORNE, on her own          Case No. CV10-2465 JFW (CWx)
    behalf and on behalf of a class of
16  similarly situated persons pursuant to   *The Hon. John F. Walter*
    F.R.C.P. 23 and 23 U.S.C. §216, and on
17  behalf of the General Public,            **DEFENDANT'S MEMORANDUM
                                             OF POINTS AND AUTHORITIES
18              Plaintiffs,                  IN SUPPORT OF ITS MOTION
                                             FOR SUMMARY JUDGMENT**
19         v.
                                             Date:          December 6, 2010
20  THE PRUDENTIAL INSURANCE                 Time:          1:30 p.m.
    COMPANY OF AMERICA, a New                Courtroom:     16
21  Jersey Corporation,
                                             Complaint Filed:  April 5, 2010
22              Defendant.                   Discovery Cutoff: March 1, 2011
                                             Motion Cutoff:    March 28, 2011
23                                           Pre-Trial Conf.:  May 6, 2011
                                             Trial Date:       May 24, 2011
24

25

26

27

28

12498351v.10 / 33250-270008

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ...........................1

    A.      Plaintiff's Job Duties.................................................................2

    B.      Plaintiff's Assigned Work Hours And Weekly Pay ............................2

III.    PLAINTIFF'S ALLEGATIONS OF "UNPAID OVERTIME" FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT PLAINTIFF NEVER WORKED MORE THAN 40 HOURS PER WEEK...................................................................................................3

IV.     PLAINTIFF'S ALLEGATIONS OF UNPAID WORK "OFF THE CLOCK" FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT PLAINTIFF WAS PAID IN EXCESS OF THE FEDERAL MINIMUM WAGE ..............................................4

V.      PLAINTIFF'S ALLEGATIONS OF UNPAID WORK "OFF THE CLOCK" FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT PLAINTIFF DID NOT EVER REPORT ANY ALLEGED EXTRA TIME WORKED AND HAS NO EVIDENCE TO SUPPORT HER REQUEST FOR DAMAGES ....................9

    A.      Prudential Had A Written Policy Requiring Plaintiff To Record All Extra Time Worked ..............................................10

    B.      Plaintiff Deliberately Failed To Record Any Alleged Extra Time Worked .....................................................11

    C.      Plaintiff's Deliberate Failure To Record Any Alleged Extra Time Worked Precludes Her Claim For Unpaid Wages ...................12

VI.     PLAINTIFF'S ALLEGATIONS OF UNPAID WORK OFF THE CLOCK WORK FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT ANY UNPAID TIME WORKED WAS *DE MINIMIS*.......................................................................................17

    A.      Plaintiff's Alleged Off The Clock Work Was *De Minimis* Based On The Lack Of Regularity Of The Additional Work Performed .....18

    B.      Plaintiff's Alleged Off The Clock Work Was *De Minimis* Based On The Practical Administrative Difficulty Of Recording Any Additional Time Worked ...............................20

    C.      Plaintiff's Alleged Off The Clock Work Was *De Minimis* Based On The Claimed Aggregate Amount Of Compensable Time ...........21

VII.    CONCLUSION ...................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adair v. City of Kirkland,*
185 F.3d 1055 (9th Cir. 1999) .................................................................. 7, 8

*Anderson v. Mt. Clemens Pottery Co.,*
368 U.S. 680 (1946) ........................................................................... 13, 17

*Anderson v. Pilgrim's Pride Corp.,*
147 F. Supp. 2d 556 (E.D. Tex. 2001) ......................................................... 22

*Blankenship v. Thurston Motor Lines, Inc.,*
415 F.2d 1193 (4th Cir. 1969) .................................................................... 9

*Boykin v. Boeing Co.,*
128 F.3d 1279 (9th Cir. 1997) .................................................................... 1

*Carter v. Panama Canal Co.,*
314 F. Supp. 386 (D.D.C. 1970) ................................................................ 22

*Dove v. Coupe,*
759 F.2d 167 (D.C. Cir. 1985) .................................................................... 9

*E.I. du Pont De Nemours & Co. v. Harrup,*
227 F.2d 133 (4th Cir. 1955) ..................................................................... 22

*Forrester v. Roth's I.G.A. Foodliner, Inc.,*
646 F.2d 413 (9th Cir. 1981) .......................................................... 12, 13, 16

*Green v. Planters Nut & Chocolate Co.,*
177 F.2d 187 (4th Cir. 1949) ..................................................................... 22

*Harvill v. Westward Comm'ns, LLC,*
433 F.3d 428 (5th Cir. 2005) .......................................................... 13, 14, 16

*Hensley v. MacMillan Bloedel Containers, Inc.,*
786 F.2d 353 (8th Cir. 1986) .................................................................. 6, 8

*Hesseltine v. Goodyear Tire & Rubber Co.,*
391 F. Supp. 2d 509 (E.D. Tex. 2005) ......................................................... 22

*Lindow v. United States,*
738 F.2d 1057 (9th Cir. 1984) ...................................................... 18, 20, 21, 22

*Maciel v. City of Los Angeles,*
542 F. Supp. 2d 1082 (C.D. Cal. 2008) ..................................................... 6, 8

*Marshall v. Sam Dell's Dodge Corp.,*
451 F. Supp. 294 (N.D.N.Y. 1978) .............................................................. 9

*Millington v. Morrow County Bd. of Com'rs*,
    2007 WL 2908817 (S.D. Ohio 2007) .................................................. 16

*Monahan v. County of Chesterfield*,
    95 F.3d 1263 (4th Cir. 1996) ........................................................... 8

*Parth v. Pomona Valley Hosp. Med. Ctr.*,
    584 F.3d 794 (9th Cir. 2009) ........................................................... 1

*Robertson v. Board of County Comm.*,
    78 F. Supp. 2d 1142 (D. Colo. 1999) .............................................. 9

*Rutti v. Lojack Corp.*,
    896 F.3d 1046 (9th Cir. 2010) ......................................................... 22

*Simmons v. Wal-Mart Assocs. Inc.*,
    2005 WL 1684002 (S.D. Ohio 2005) .............................................. 16

*Smith v. T-Mobile USA, Inc.*,
    570 F.3d 1119 (9th Cir. 2009) ......................................................... 4

*United States v. Klinghoffer Bros. Realty Corp.*,
    285 F.2d 487 (2d Cir. 1960) ........................................................... 8

**FEDERAL STATUTES**

29 U.S.C.
    § 206(a) ....................................................................................... 8, 9
    § 206(a)(1) .......................................................................... 1, 5, 17, 23
    § 206(a)(1)(B) ................................................................................. 6
    § 207(a)(1) ........................................................................ 1, 4, 5, 17, 23
    § 207(e) ......................................................................................... 3
    § 516.2(c) ..................................................................................... 10

**RULES**

Fed. R. Civ. Proc. 56(c)(2) ................................................................ 1

**REGULATIONS**

29 C.F.R. § 785.18 ........................................................................... 3

## I.    INTRODUCTION

Plaintiff Dominique Osborne ("Plaintiff"), who worked for Defendant Prudential Insurance Company of America, Inc. ("Prudential"), for less than one year in a call center in California prior to being terminated for poor performance, alleges a single cause of action for "unpaid overtime" in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1).  This claim, however, cannot withstand this motion in that it is undisputed that Plaintiff never worked overtime – as evidenced by both her deposition testimony and daily production reports that she herself completed and confirmed the accuracy of.

Absent overtime, Plaintiff's only other potential form of relief is an unpled claim for failure to pay the federal minimum wage in violation of the FLSA, § 206(a)(1).  Like her overtime claim, however, this too fails based on undisputed facts -- Plaintiff admitted that she was paid well above the federal minimum wage for all of the alleged extra time she worked.

In short, Plaintiff has filed a purely entrepreneurial lawsuit and did so without any factual foundation for her claims.  Based on the undisputed facts and controlling legal authorities cited below, summary judgment should be granted.[1]

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

**All** of the facts discussed herein are taken entirely from Plaintiff's own sworn deposition testimony and a written company policy that, as she admits,

---

[1] Summary judgment is warranted where "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c)(2).  Summary judgment is routinely granted for employers in claims for unpaid wages or overtime wages brought under the FLSA.  *See, e.g., Parth v. Pomona Valley Hosp. Med. Ctr.*, 584 F.3d 794, 803 (9th Cir. 2009) (affirming summary judgment for the employer on claim for unpaid overtime under FLSA § 207(a)(1); e conclude, as did the district court, that [plaintiff] failed to reduce any evidence or authority to support her claim . . . [based on] the FLSA."); *Boykin v. Boeing Co.*, 128 F.3d 1279, 1280 (9th Cir. 1997) (affirming summary judgment for employer on claim for overtime pay).

required her to accurately record all time worked.  Thus, there can be no material facts that are in dispute.[2]

### A.    Plaintiff's Job Duties

Plaintiff worked for Prudential from August 21, 2008 to July 17, 2009. (SUF ¶ 1.)  Plaintiff was assigned to the company's client service center or call center in Agoura Hills, California, which had approximately 14 employees.  (SUF ¶¶ 2, 3.)

Employees at the Agoura Hills call center, rotate job assignments between answering telephone calls, handling insurance benefit claims and preparing correspondence and other administrative work.  (SUF ¶ 4.)  When employees were assigned to handle telephone calls, they wore headsets and either spoke to callers or waited for calls directed from a computerized telephone queue.  (SUF ¶ 5.) When employees were assigned to handle claims, they processed and matched claims with the proper payments.

Employees assigned to handle claims could be required to switch to handling telephone calls at any time.  (SUF ¶ 6.)  Likewise, employees moved from processing claims to handling related correspondence throughout the day.  (SUF ¶ 7.)  Thus, Plaintiff explained that the job assignments for the employees at Plaintiff's call center were "in a constant state of change through the day, depending on call volume or claim volume."  (SUF ¶ 8.)

### B.    Plaintiff's Assigned Work Hours And Weekly Pay

Plaintiff's regular shift was eight hours per day, from 8:00 a.m. to 4:00 p.m. (SUF ¶ 9.)  Plaintiff worked five days per week and never worked on weekends. (SUF ¶ 10.)

---

[2] Each fact cited herein is referenced as numbered in the Statement of Undisputed Facts and Conclusions of Law, filed herewith.  Each fact is referenced as "(SUF ¶ [number])."

1    Plaintiff's scheduled eight-hour shift included a 30-minute unpaid lunch

2   break, which she took every day.  (SUF ¶¶ 11, 12.)  Her daily scheduled shift also

3   included at least two paid 10-minute breaks, which Plaintiff admitted that she was

4   always permitted to take.  (SUF ¶ 13.)  In addition, Plaintiff conceded that she was

5   also offered a third paid 10-minute break.  (SUF ¶ 14.)[3]

6    As Plaintiff admitted, Prudential only expected her to work for seven of the

7   eight hours of her scheduled shift each day.  (SUF ¶ 15.)  However, she was paid

8   for seven and one-half hours of work per day:

9    Q.    And so as part of your regular work shift from 8:00 a.m. to 4:00
10    p.m., you had 30 minutes of an unpaid lunch and the remaining
         seven and a half hours were paid, correct?

11    A.    Yes, yes.  Yes, that's correct.

12   (SUF ¶ 16.)  As a result, Plaintiff was paid for 37.5 hours per week.  (SUF ¶ 17.)

13   **III.    PLAINTIFF'S ALLEGATIONS OF "UNPAID OVERTIME" FAIL AS
          A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT
14          PLAINTIFF NEVER WORKED MORE THAN 40 HOURS PER
          WEEK**

15    Plaintiff's Complaint contains only one cause of action for "unpaid overtime

16   Compensation."  (Complaint, ¶¶ 46-52.)  Plaintiff alleges that Prudential failed to

17   pay overtime wages:

18
19    Prudential has failed to pay Plaintiffs and other similarly situated
         current and former employees the **overtime wages** at the statutorily
20    required rate because it failed to include all compensation, inclusive of
         incentive pay, into the regular rate of pay for all hours worked in
         **excess of forty (40) in one work week**, to which they were entitled
21    under 29 U.S.C. § 207(e).

22   (Complaint, ¶ 50, emphasis added.)

23    This allegation is squarely contradicted by Plaintiff's testimony that she

24   **never** worked overtime.  (SUF ¶ 18.)  Plaintiff admitted in her deposition that she

25   never worked over 40 hours in any week while she was employed at Prudential:

26   ---
[3] Plaintiff was not required to work during three 10-minute rest breaks.
27   Nonetheless, the three 10-minute rest breaks were always paid and counted as time
     worked.  *See* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5
28   minutes to about 20 minutes . . . may not be offset against other working time.").

Q.    But based on your understanding that overtime was over 40 hours a week, there were no weeks at Prudential when you worked over 40 hours,    correct?

A.    No, I didn't work over 40 hours a week at Prudential. (SUF ¶ 18.)[4]

The FLSA mandates that employers pay overtime premium pay **only** when an employee works in excess of 40 hours in one workweek.  *See* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of its employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed"); *Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1120 n.1 (9th Cir. 2009) ("The FLSA states, in relevant part, that 'no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'") (citing 29 U.S.C. § 207(a)(1)).

Because it is undisputed that Plaintiff never worked over 40 hours in any week, her Complaint is fatally defective and summary judgment should be granted.

**IV.    PLAINTIFF'S ALLEGATIONS OF UNPAID WORK "OFF THE CLOCK" FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT PLAINTIFF WAS PAID IN EXCESS OF THE FEDERAL MINIMUM WAGE**

Although the Complaint alleges only one cause of action for unpaid overtime, the "Factual Allegations" section of the Complaint alleges that Plaintiff also was not paid "for all of the hours [she] worked." (Complaint, ¶ 25.)[5]  Plaintiff alleges that such other "hours worked" included pre-shift activities as follows:

---

[4] Notwithstanding Plaintiff's testimony that she was never required to work overtime, she also testified that she would have refused to work overtime if she had ever been requested to do so by the company.  (SUF ¶ 19.)

[5] In the Complaint, Plaintiff also alleges that she "earned incentive payments," although such "incentive payments were not included in calculating the regular rate of pay for purposes of providing overtime under the FLSA."  (Complaint, ¶ 33.) Plaintiff's sworn testimony contradicts this statement because Plaintiff testified

> Plaintiffs spent time before each shift engaging in work activities such as booting up and logging on to their computers, and logging on the multiple computer and phone programs.  These activities began the continuous work day and were necessary and indispensible to Plaintiffs' principal work and were performed for the benefit of Prudential.

(Complaint, ¶ 28.)  These "other hours worked" also included post-shift activities as follows:

> Plaintiff spent time at the end of each shift engaging in work activities such as completing, answering and servicing Prudential customer telephone calls, shutting down and logging off of their computers, and logging out of multiple computer and phone programs.  At the end of their shifts, Plaintiffs were required to complete paperwork, write correspondence to customers, and perform other tasks that were necessary and indispensible to Plaintiffs' principal work and were performed for the benefit of Prudential.  All of these activities are included within the continuous work day.

(Complaint, ¶ 29.)  Despite these factual recitations, Plaintiff did not plead any cause of action and, therefore, failed to preserve any right to allege such a claim.

But even if Plaintiff's allegations of other extra "hours worked" are considered, these allegations do not state any violation of the FLSA that could allow any recovery of damages.  The FLSA allows recovery **only** for violation of its overtime pay requirements, 29 U.S.C. § 207(a)(1), or its minimum wage requirements, 29 U.S.C. § 206(a)(1).  Thus, if the hours claimed to be worked do not exceed the FLSA's overtime pay requirements under 29 U.S.C. § 207(a)(1), then the issue becomes whether the claimed hours worked meet the FLSA's minimum wage requirements under 29 U.S.C. § 206(a)(1).

The minimum wage requirements of the FLSA merely require payment of the federal minimum wage based on the number of hours worked.  Compliance with the minimum wage requirement is measured by an averaging method -- that is, "no violation occurs so long as the total weekly wage paid by an employer … [is] equal to the number of hours actually worked that week multiplied by the

---

that incentive payments were not offered to her and not part of the compensation available to employees at her location.  (SUF ¶ 20.)

DEFENDANT'S MEMORADUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

minimum hourly [rate]."  *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d
353, 357 (8th Cir. 1986) (internal quotation omitted).  *Accord Maciel v. City of Los
Angeles*, 542 F. Supp. 2d 1082, 1097 (C.D. Cal. 2008) (following *Hensley*).

As she testified in her deposition, Plaintiff's wage rate was $19.48 per hour.
(SUF ¶ 21.)  Plaintiff also testified that she was paid for 37.5 hours per week for
every week she worked.  (SUF ¶ 17.)

In connection with her claims for uncompensated off the clock time,
Plaintiff testified that she might have worked **up to** 13 or 15 minutes extra per day,
on the "worst" day, at **the very most**:

Q.      . . . [H]ow much extra time did you work on the worst day?

A.      On the worst day?  I would say it could be up to like 13, 15
         minutes.

Q.      Okay. And if this was the worst case scenario week -- let's say
         15 minutes of extra time worked each day without being paid --
         that would be 15 minutes times five days a week, right?

A.      Yes.

(SUF ¶ 22.)  Based on the longest amount of time that Plaintiff could have **ever**
spent working off the clock on the very worst day, she still would not have worked
for less than the federal minimum wage.  Indeed, even if Plaintiff worked as much
as 15 minutes off the clock **every** day, she would have allegedly worked beyond
her schedule for a total of no more than 1 hour and 15 minutes per week.  (SUF
¶ 23.)  This means that as a worst case scenario, Plaintiff worked only 38 hours and
45 minutes per week.  (SUF ¶ 24.)

The pay at the federal minimum wage of $6.55 per hour for 38 hours and 45
minutes would have to be at least $253.82 per week.[6]  Here, Plaintiff was paid

---

[6] During Plaintiff's employment with Prudential in 2008 and 2009, the federal
minimum wage was $6.55 per hour.  29 U.S.C. § 206(a)(1)(B).

$730.50 per week.  (SUF ¶ 62.)  Accordingly, Plaintiff has no minimum wage claim.[7]

The decision in *Adair v. City of Kirkland*, 185 F.3d 1055 (9th Cir. 1999), is dispositive.  There, the Ninth Circuit held that a claim for unpaid wages under the FLSA requires either a violation of the federal overtime pay requirements **or** the federal minimum wage requirements.  *Adair*, 185 F.3d at 1059.  As the Court explained:

> The [plaintiffs] make alternative FLSA claims. First, they argue that the pre-shift briefings were overtime under the FLSA for which they were not properly compensated.  Second, they argue that even if the pre-shift briefings were not overtime, they constituted work for which [they] were never compensated, thus allowing them to maintain an action under the FLSA to recover unpaid wages.

*Id.*  After rejecting the overtime claims on the ground that the plaintiffs had not worked enough time to be eligible for overtime pay, the Court then turned to the claim for off the clock pay or "gap pay" under the FLSA.  *Id.* at 1062.  As the Court noted, "'gap time' refers to time that is not covered by the overtime provisions [of the FLSA] because it does not exceed the overtime limit, and to time that is not covered by the minimum wage provisions [of the FLSA] because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked."  *Id.* at 1062 n.6.

The Court then held that the district court properly rejected any such claim for gap time pay, because such claims are not covered under the FSLA:

---

[7] More specifically, Plaintiff earned $19.48 an hour for 37.5 hours of on the clock work each week, earning $730.50 per week (37.5 hours/week x $19.48/hour = $730.50/week).  Plaintiff alleges that, at a maximum, she worked 1.25 hours off the clock, raising her total number of hours worked to a maximum of 38.75 hours each week.  In order for Plaintiff's weekly pay of $730.50 to be less than the federal minimum wage of $6.55 per hour, Plaintiff would have to work more than 111.5 hours per week ($730.50/week ÷ $6.55/hour = 111.52 hours per week).  Of course, Plaintiff cannot -- and does not -- allege she worked this amount of hours. For Plaintiff to work 111.52 hours in a five-day week, she would have to work 22.3 hours per day.

7

> The district court properly rejected any minimum wage claim . . . finding that [the plaintiffs'] salary, when averaged across their total time worked, still paid them above minimum wage.

*Id.* at 1062.

More recently, in *Maciel v. City of Los Angeles*, 542 F. Supp. 2d 1082 (C.D. Cal. 2008), the Central District of California similarly held that uncompensated "gap time" pay does not violate the FLSA. *Id.* at 1097. As the Court explained:

> The FLSA creates a cause of action wherever a qualified employer fails to compensate for overtime. "Gap time" refers to time that is not covered by the overtime provisions because the time exceeds the internal employer's policy, but does not exceed the straight-time limits under the FLSA.

*Id.* (citing *Adair*, 185 F.3d at 1062). The Court then held:

> No violation [of the FLSA's] minimum wage requirements occurs so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

*Maciel*, 542 F. Supp. 2d at 1098 (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)). As the Court recognized, the majority of courts have held that such "gap time" claims are not actionable:

> [T]he majority of courts have held that employees are not entitled to compensation for such [gap] time under the FLSA. Provided the actual number of hours worked divided by the employee's salary at the regular rate does not fall below the minimum wage requirements of the FLSA, a "pure gap time" claim is untenable.

*Maciel*, 542 F. Supp. 2d at 1097 (citations omitted). *Accord Monahan v. County of Chesterfield*, 95 F.3d 1263, 1282 (4th Cir. 1996) (claims for gap time are not cognizable under the FLSA "when the employer has not violated the FLSA's minimum wage/maximum hour provisions"); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (the Court stated that "a violation of section 206(a) [of the FLSA] occurs when an employee is paid at a rate that is below the minimum rate. The statute requires the payment of a minimum wage to [employees] who in any work week [are] engaged in commerce,' . . . and sets the minimum wage in terms of an hourly rate. However, no violation occurs

'so long as the total weekly wage rate paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.'"); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1197-1198 (4th Cir. 1969) ("the employer was in compliance with the minimum wage revisions and . . . there was no statutory violation [of the FSLA] so long as 'each employee received during each workweek compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate'").[8]

Because it its undisputed that Plaintiff earned in excess of the minimum wage for all hours worked -- including all of the alleged extra time worked outside her scheduled shift -- she cannot show a violation of the FLSA, and cannot survive summary judgment, even if her allegations of off the clock gap time work are considered.

**V.   PLAINTIFF'S ALLEGATIONS OF UNPAID WORK "OFF THE CLOCK" FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT PLAINTIFF DID NOT EVER REPORT ANY ALLEGED EXTRA TIME WORKED AND HAS NO EVIDENCE TO SUPPORT HER REQUEST FOR DAMAGES**

Even if the alleged off the clock gap time was compensable under the FLSA, Plaintiff's claim would still fail for another separate and independent reason -- she deliberately did not follow Prudential's written policies requiring her to record all extra time worked and deliberately did not otherwise inform Prudential that she had worked off the clock without pay at any time during her employment.

---

[8] *See also  Robertson v. Board of County Comm.*, 78 F. Supp. 2d 1142, 1159 (D. Colo. 1999) ("Defendant's practice of not paying for 'gap time' cannot be considered a violation of the FLSA."); *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985) (holding that it was error to consider "a period shorter than the workweek to measure compliance with minimum wage law"); *Marshall v. Sam Dell's Dodge Corp.*, 451 F. Supp. 294, 301-303 (N.D.N.Y. 1978) ("If the total wage paid to each [employee] in this case during any given week is divided by the total time he worked that week, the resulting hourly wage exceeds [the minimum wage] for every week and every [employee] involved.  We believe this is all that is necessary to meet the requirements of § 206(a) [of the FLSA]").

### A. **Prudential Had A Written Policy Requiring Plaintiff To Record All Extra Time Worked**

As Plaintiff testified, her regular shift hours of 8:00 a.m. to 4:00 p.m. were "automatically recorded" by Prudential without the need for her to punch a time clock or fill out a time card.  (SUF ¶ 25.)[9]  As Plaintiff testified, she knew that Prudential had written policies that governed how to record extra time worked beyond a scheduled shift and that Prudential had a specific policy regarding payroll and timekeeping:

> Q.   You are sure that there was a policy regarding payroll and timekeeping, right?
>
> A.   Yes.

(SUF ¶ 26.)

It is undisputed that Prudential's written policies regarding payroll and timekeeping explicitly provide for extra pay for extra work, including pay at overtime rates.  (SUF ¶ 59.)[10]  With respect to extra "gap time" pay for extra work totaling less than 40 hours per week, Prudential's written policies explicitly provide for extra pay for any extra time worked beyond an employee's scheduled shift -- *i.e.*, that non-exempt employees will receive their regular or "straight" time rate for additional "gap time" worked beyond their scheduled shift of 37.5 hours per week:

> The regular pay rate applies for all hours worked up to and including 40 hours in a workweek.  This means that employees whose standard

---

[9] The federal regulations interpreting the FLSA expressly permit employers to maintain records that show the pre-set schedule of daily and weekly hours normally worked, as long as the exact number of hours worked each day and each week are recorded for those weeks in which an employee's actual hours of work deviate from the fixed schedule.  *See* 29 U.S.C. § 516.2(c).

[10] With respect to overtime pay, Prudential's written policies require overtime work to be recorded for all time worked in excess of 40 hours and explicitly state that such work will be compensated at a premium pay rate of one-and-a-half times the regular hourly rate.  (SUF ¶ 60 ("All employees in positions that are classified as nonexempt must be paid overtime in accordance with applicable federal, state and local laws.  Employees must complete and submit overtime documents within the required time frame.").)

workweek is 37.5 hours receive their **"straight" time for additional hours worked beyond 37.5 hours up to an including 40 hours**.

(SUF ¶ 61; emphasis added.)

Plaintiff admitted that Prudential's policy regarding payroll and timekeeping was always available on the electronic intranet system on her computer, but she never bothered to review the policy:

> Q.    And the Prudential electronic intranet system also had a section on payroll and overtime, correct?
>
> A.    I'm sure it did.  I didn't review it, though.

(SUF ¶ 27.)  Thus, Plaintiff intentionally failed to learn how to record any alleged extra time worked beyond her shift, despite the fact that she was aware that the relevant policies and practices were accessible to her.

## B.    Plaintiff Deliberately Failed To Record Any Alleged Extra Time Worked

In addition to her failure to learn how to record any extra time worked, Plaintiff also deliberately failed to disclose her alleged extra time worked to Prudential at any time during her employment.  As a result, she prevented Prudential from remedying any alleged wage discrepancies, if any existed.

Plaintiff testified that she knew "it wasn't right" for her to not receive extra pay for extra work, but despite this knowledge, she never contacted anyone at Prudential to inquire about the additional pay she felt she was owed:

> Q.    But you understood at Prudential that if you had wanted to try to navigate to find out who the appropriate person is for payroll issues or human resources issues, there were resources to find those people, right?
>
> A.    It's just something to where I -- I didn't want to be, I guess, going behind someone's back or questioning somebody's authority, considering everything that we were going through on a day-to-day basis.  So it was just something that I just -- I just left alone even though I saw that it wasn't right.

(SUF ¶ 28.)  To be sure, Plaintiff never told any supervisor or manager that she had been working off the clock:

Q.    . . . [D]id you ever say to a supervisor or manager, you know, "I stayed beyond my shift ending time today, how should I record or am I allowed to record the extra time worked?"

A.    No.  No, I didn't go ahead and push the subject.

(SUF ¶ 29.)

### C.    Plaintiff's Deliberate Failure To Record Any Alleged Extra Time Worked Precludes Her Claim For Unpaid Wages

Plaintiff's deliberate failure to comply with Prudential's written and published time recording policies and her deliberate failure to inform her supervisor or manager about her alleged off the clock work defeat any claim for unpaid wages under the FLSA.

The decision in *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), compels this conclusion.  There, the Ninth Circuit affirmed summary judgment for an employer on the grounds that the plaintiff failed to properly inform his employer that he worked additional time without compensation.  *Id.* at 414.  As the Court held:

> [Plaintiff] himself testified in his deposition that he "did not mention any unpaid overtime work to any store official prior to filing his complaint."  [Plaintiff] did not raise a genuine issue of material fact concerning whether [his employer] should have known about his alleged uncompensated hours] . . . .

*Id.*  Indeed, the Court held that the plaintiff did not create a triable issue even though, **after** filing his lawsuit, he "presented an exhibit showing what he alleges is a contemporaneously compiled monthly list of unpaid overtime hours for the claim period."  *Id.*  Despite the plaintiff's "evidence" of his alleged additional hours worked without pay, the Court concluded that the plaintiff's failure to report this information **during** his employment was fatal to his claim.  In the language of the Court:

> [I]t is quite obvious that, besides not attempting to notify [the employer] of his alleged uncompensated overtime hours, **[plaintiff] deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours.**

*Id.* (emphasis added).  As the Court stressed, an employee who withholds information about extra time worked cannot later claim violation of the FLSA:

> An employer must have an opportunity to comply with the provisions of the FLSA.
>
> [W]here the acts of an employee prevent an employer from acquiring knowledge here of alleged uncompensated [work] hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA].

> The district court's grant of summary judgment is therefore affirmed.

*Id.* at 414-415.

In the present case, Plaintiff does not have **any** type of record showing the amount of time she allegedly worked off the clock.  Indeed, she admitted that she never maintained any records of when she arrived at work or when she stopped working.  (SUF ¶¶ 30, 31.)  Plaintiff also conceded that it would be impossible for her to reconstruct the amount of extra work she allegedly performed, as she has no accurate records or memory to dispute Prudential's time records:

> Q.    Okay. If you were to look through them, would you be able to spot specific days that you think are not accurate?
>
> A.    No. No. Realistically, I don't know who could do that. I know I can't, so no. I wouldn't be able to say which days are not accurate.

(SUF ¶ 32.)  Simply put, there is no evidence to support her claim.

In *Harvill v. Westward Comm'ns, LLC*, 433 F.3d 428 (5th Cir. 2005), the plaintiff claimed she was required to submit false time sheets that did not include all time worked, but presented no evidence to substantiate her claims of unpaid work off the clock.  *Id.* at 440.  In affirming summary judgment for the employer, the Court held that these "unsubstantiated assertions" were inadequate to meet the plaintiff's burden to "demonstrate that she has performed work for which . . . she was not compensated."  *Id.* at 441 (citing *Anderson v. Mt. Clemens Pottery Co.*, 368 U.S. 680, 687-688 (1946)).  As the Court explained:

> [Plaintiff's] argument against summary judgment on her FLSA claim consisted of her unsubstantiated assertions that [her supervisor]

required her to turn in false time sheets, and that [her employer] "clearly suffered or permitted" her to work overtime. She contended that it was up to the jury to decide who was telling the truth. She offered no factual allegations at all to substantiate her claim, and she presented no evidence of the amount or the extent of hours she worked without compensation.

Moreover, she presented no evidence that [the employer] was aware that she worked overtime hours without compensation. . . .

[Plaintiff] has failed to raise a genuine issue of material fact as to whether she went uncompensated for overtime work. Accordingly, the district court did not err in granting summary judgment for [her employer] on [plaintiff's] FLSA claim.

*Id.*

The facts regarding Plaintiff's deliberate failure to submit accurate time records in this case are even more compelling than the facts in *Harvill*. In *Harvill*, the plaintiff alleged that she was directly ordered to "falsify" her daily time records by her employer. *Id.* Here, there is no evidence that Plaintiff was ordered to submit false time records. To the contrary, it is undisputed that Plaintiff was required to report all extra time worked. Thus, Prudential had no reason to believe that Plaintiff's daily time records were false, because Plaintiff was required to record all extra time worked as explicitly stated in Prudential's written policies. (SUF ¶ 60.)

In addition to the requirement to record all time worked on Prudential's daily time records for payroll purposes, Plaintiff was also required to report all time worked on a separate document that was used to track her job performance. This document was referred to as a "daily production report" or "daily production log." (SUF ¶ 33.) The daily production log required Plaintiff to record all of the work-related activities performed throughout the day and "the actual amount of time spent" spent on each activity. (SUF ¶¶ 33, 35.)[11] As Plaintiff testified:

---

[11] As Plaintiff explained, there were different "production codes" for time spent working on "productive" matters such as handling telephone calls, as well as "non-productive" time, such as vacations, PTO time or time spent in meetings. The daily production report included the sum of all of the time spent for each of these activities. (SUF ¶ 36.)

1
2

    Q.      Okay.  And so looking at all of these dates, you filled in the amount of time on each of these different work-related activities per day, correct?

3

    A.      Yes.  That's correct.

4

(SUF ¶ 34.)  In order to prepare the daily production report, Plaintiff was required

5

to keep a handwritten log of the amount of time spent performing all job duties and

6

then was required to enter the time into Prudential's electronic system.  (SUF

7

¶ 38.)  Prudential's policy was to do this every day.  (SUF ¶ 39.)

8

        Plaintiff admitted that Prudential relied on her daily production reports as

9

"the most accurate" documentation of the amount of time worked each day:

10
11

    Q.      This is the most accurate record that you're aware of showing the amount of time you spent during the day on different work activities, right?

12
13

    A.      I would say it would probably be the closest thing to something being accurate as regards to some type of record kept for what we did for production throughout the day.

14

(SUF ¶ 37.)  As Plaintiff also admitted, the amount of time she recorded each day

15

was **always accurate**:

16
17

    Q.      But when you recorded the total amount of time you worked on a particular day --

18

    A.      Mm-hmm.

19

    Q.      -- that was always accurate, correct?

    A.      I would say yes.

20

(SUF ¶ 40.)  In fact, Plaintiff admitted that she did not "know of" any other record

21

that could be more accurate than the production log:

22
23

    Q.      And there is no other set of records that you're aware of that would have a more accurate representation of the amount of time you spent on these various daily activities, right?

24

    A.      No, not that I know of.

25

(SUF ¶ 41.)

26

        Plaintiff's admissions are dispositive -- she admitted she did not include any

27

alleged extra time worked on her daily production reports, she admitted the daily

28

1   production reports were accurate, and she admitted she had no evidence to refute

2   the time she recorded on her daily production reports.  As explained in *Forrester*,

3   646 F.2d at 414, and *Harvill*, 433 F.3d at 440-441, Plaintiff is precluded from now

4   claiming that the records she submitted to Prudential are inaccurate.

5       But even if the Court were to consider Plaintiff's belated claim that the daily

6   production reports she submitted do not include all time worked, it is still

7   undisputed that Plaintiff has no evidence to show the amount of alleged extra time

8   worked that she never reported.  At most, Plaintiff alleges she worked some

9   unspecified amount of extra time on unspecified days, without any records to

10  substantiate the time she spent before or after her shift.  Plaintiff's only support for

11  her allegations of unpaid work is a vague assertion that Prudential's records are

12  inaccurate -- albeit because of her own wrongdoing in failing to record her alleged

13  extra time worked.  Such bare assertions that an employer's records are

14  "inaccurate" are not enough to survive summary judgment.  *See, e.g., Millington v.*

15  *Morrow County Bd. of Com'rs*, 2007 WL 2908817 at *3, 4 (S.D. Ohio 2007)

16  (granting summary judgment on an FLSA claim based on the plaintiff's lack of

17  sufficient proof of extra time worked; "plaintiff states in his affidavit that he was

18  required to work in excess of forty hours per week without compensation [and] that

19  he was not required to document his time in excess of forty hours per week;" "an

20  employer cannot suffer or permit an employee to perform services about which the

21  employer knows nothing;" "there is no violation of the FLSA where the employee

22  performs uncompensated work but deliberately prevents his employer from

23  learning of it;" "[p]laintiff's bare allegation that he worked an average of five

24  hours [extra] every week . . . is insufficient to meet his burden of proof"); *Simmons*

25  *v. Wal-Mart Assocs. Inc.*, 2005 WL 1684002 at *10 (S.D. Ohio 2005) ("[P]laintiff

26  has failed to adduce sufficient evidence to withstand summary judgment on his

27  wage and hour claims.  The only evidence plaintiff offers is his assertion that [his

28  employer] required him to work off the clock in excess of 200 times for which he

was never compensated.  Plaintiff alleges he worked off the clock . . . approximately 92 times before clocking in for his shift, . . . and . . . approximately 55 to 60 times after clocking out at the end of his shift.  However, plaintiff fails to support his assertions with any additional evidence."  "Put simply, plaintiff's bald assertion that . . . is not enough to create genuine issues of material fact . . . .").

## VI.   PLAINTIFF'S ALLEGATIONS OF UNPAID WORK OFF THE CLOCK WORK FAIL AS A MATTER OF LAW, BECAUSE IT IS UNDISPUTED THAT ANY UNPAID TIME WORKED WAS *DE MINIMIS*

Even if Plaintiff's allegations of unpaid off the clock time could be supported by admissible evidence, any alleged extra time worked was *de minimis* and, therefore, not compensable.  Notwithstanding that the daily production reports completed by Plaintiff each day did not include any time worked above 7.5 hours, Plaintiff testified that at the very **most** she **may** have worked **up to** 15 minutes off the clock every day -- for a total of no more than 1 hour and 15 minutes per week.  This alleged extra time worked is *de minimis* under both the overtime and minimum wage sections of the FLSA.  *See* 29 U.S.C. § 207(a)(1); 29 U.S.C. § 206(a)(1).  Plaintiff's alleged extra time worked does not put her beyond 40 hours of work per week and does not put her wage rate below the federal minimum wage.

In *Anderson v. Mt. Clemens Pottery Co.*, 368 U.S. 680 (1946), the Supreme Court held that time worked before and after a scheduled shift is not compensable if the amount of extra time is *de minimis*.  *Anderson*, 368 U.S. at 692-693.  As the Court stated:

> It is only when an employee is required to give up a **substantial** measure of his time and effort that compensable working time is involved . . . .  [I]t is appropriate to apply a *de minimis* doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek.

*Id*. at 692-693 (emphasis added).

In *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), the Ninth Circuit adopted the *de minimis* doctrine based on a three-pronged test. *Lindow*, 738 F.2d at 1063. As the Court held, time qualifies as *de minimis* based on (1) the regularity of the additional work performed; (2) the practical administrative difficulty of recording the additional time for the employer; and (3) the aggregate amount of compensable time. *Id.*

### A. Plaintiff's Alleged Off The Clock Work Was *De Minimis* Based On The Lack Of Regularity Of The Additional Work Performed

Plaintiff's alleged additional time worked without pay is *de minimis* under the first prong of the test in *Lindow*, 738 F.2d at 1063, based on the lack of "regularity of the additional work performed." As Plaintiff testified, her regular work hours were from 8:00 a.m. to 4:00 p.m. each day. (SUF ¶ 42.) But Plaintiff testified that she did not always work her regular shift hours -- on some days, she arrived at the office "only a couple of minutes" before her shift started. (SUF ¶ 43.) On other days, she arrived at the office "exactly at the time [her] shift started." (SUF ¶ 44.) On other days, she arrived at the office "after [her] shift started." (SUF ¶ 45.)

Plaintiff alleges that she was "required" to arrive at work early to log on to Prudential's computer system before her scheduled shift. (Complaint, ¶ 25.)[12] It is undisputed, however, that the amount of time she spent to log on prior to her shift was negligible. As she testified, the policy in effect at the Agoura Hills call center required her to log on to only **one** of the company's computer systems by the beginning of her shift. She could then log on to the other computer systems **after** her shift started:

---

[12] Obviously, the alleged "requirement" that Plaintiff arrive at work early was not something that Plaintiff regularly followed. As shown above, there were days when she arrived at work exactly when her shift started and days when she arrived at work after her shift started. Further, Plaintiff admitted that she was "never disciplined" or "in any way counseled" about the time she arrived at the office. (SUF ¶ 46.)

> Q.      But if somebody was following the policy articulated at the call center where you worked, they could have logged on to just one of those systems by 8:00 a.m. and then log on to the other systems after 8:00 a.m., right?
>
> A.      Yes.  That's true.

(SUF ¶ 47.)  She conceded that to be considered "logged on" at 8:00 a.m., she could still be loading computer programs **after** her shift had started:

> Q.      And so in order to be considered logged on by 8:00 a.m., you might still be logging on to programs after 8:00 a.m., right?
>
> A.      Yes. That's correct.
>
> Q.      And you could login to those other computer systems after 8:00 a.m., right?
>
> A.      Yes.  You could go ahead and do that.

(SUF ¶ 48.)

More importantly, Plaintiff testified that she could log on to **any** of the computer systems within one to three minutes per system:

> Q.      So on the dates when you had to begin your shift on telephones, the majority of the time it was Lotus Notes which could take up to two minutes, the telephone queue IP Agent which would take 15 or 20 seconds, the ABC system which could take a minute to a minute and a half, and the CFE system which could take two to three minutes; is that right?
>
> A.      Yes.  That's right, yes, to get all of these systems up, yes.

(SUF ¶ 49.)[13]  Even when Plaintiff had to begin her shift logged on to the telephone queue to receive calls at 8:00 a.m., she testified that "it didn't take that long," which she described as "about 15, 20 seconds."  (SUF ¶ 52.)  Thus, if she needed to be logged on to the telephone queue by 8:00 a.m., she would only need to arrive at work **30 seconds** before 8:00 a.m. to be prepared to answer calls when her shift began.  (SUF ¶ 53.)

---

[13] Plaintiff testified that one additional computer system, the "Pride" system might take an additional five to seven minutes to log in, but she had to log in only "thirty to forty percent" of the time.  (SUF ¶¶ 50, 51.)

1       Plaintiff also alleges that she was required to work off the clock after her

2 shift ended because she had to log out of Prudential's computer system at the end

3 of the day.  (Complaint, ¶ 29.)  This alleged off the clock time worked was also *de*

4 *minimis*.  As her testimony provides, Plaintiff could log out of the computer within

5 three minutes.  (SUF ¶ 54.)

6       Plaintiff also claims that Prudential required her to complete telephone calls

7 that extended beyond her shift, despite her testimony that she could block all new

8 telephone calls from coming to her prior to the end of her shift and her concession

9 that she could start logging out of her computer at 3:50 p.m.--which was 10

10 minutes before the end of her shift--on days when she was not assigned to handle

11 telephone calls.  (SUF ¶¶ 55, 56.)  Plaintiff's **longest** amount of alleged post-shift

12 off the clock work on her longest day was no more than 13 to 15 minutes.  (SUF

13 ¶ 22.)  Plaintiff testified that this was the worst case scenario and that, "on

14 average," she usually left work between 4:07 and 4:15 p.m.  (SUF ¶ 57.)  Based on

15 her testimony, Plaintiff's alleged extra time worked before or after her shift varied

16 day-to-day, but in general totaled less than 10 minutes.

17       Thus, the first prong of the *de minimis* test is satisfied, because it is

18 undisputed that there was no "regularity of additional work performed."  *Lindow*,

19 738 F.2d at 1063.

20     **B.**    **Plaintiff's Alleged Off The Clock Work Was *De Minimis* Based On The Practical Administrative Difficulty Of Recording Any**

21         **Additional Time Worked**

22       Plaintiff's alleged additional time worked also is *de minimis* under the

23 second prong of the test in *Lindow*, 738 F.2d at 1063, based on the "practical

24 administrative difficulty of recording the additional time for the employer."  This is

25 especially true in Plaintiff's case, given that she intentionally did not ever report

26 any extra time worked, either in her daily time records or daily production reports.

27       As shown above, Plaintiff never recorded any extra time worked.  Plaintiff

28 also never informed her supervisor or manager when she allegedly worked beyond

her shift and did not get paid.  (SUF ¶ 29.)  Plaintiff further testified that she did not adjust the amount of time worked--or inform her supervisor or manager--when she arrived 3, 5, or even 10 minutes **late** and, therefore, did not work her full shift. (SUF ¶ 58.)  Plaintiff simply cannot claim that it was too troublesome for her to record small variations from her scheduled and shift and simultaneously argue that it was not administratively difficult to record such minimal amounts of time worked.

Based on Plaintiff's testimony, it is undisputed that there was an administrative difficulty in accurately recording the amount of time Plaintiff worked.  This was caused by the fact that Plaintiff deliberately failed to accurately record her time.

Thus, the second prong of the *Lindow* test is satisfied, because it is undisputed that there was "a difficulty of recording any additional time worked." *Lindow*, 738 F.2d at 1063.

C.   **Plaintiff's Alleged Off The Clock Work Was _De Minimis_ Based On The Claimed Aggregate Amount Of Compensable Time**

Plaintiff's alleged additional time worked is *de minimis* based on the third and final prong of the test in *Lindow*, 738 F.2d at 1063, based on "the aggregate amount of compensable time."  It is undisputed that the aggregate amount of alleged off the clock time worked by Plaintiff was in general less than approximately 10 minutes on most days, if she worked any time beyond her shift at all.  As Plaintiff testified, her alleged pre-shift off the clock work was approximately one to three minutes for her computer log on.  (SUF ¶ 49.)  As she also testified, her alleged post-shift off the clock work was also approximately three minutes.  (SUF ¶ 54.)

Being generous, the total alleged off the clock work was less than 10 minutes, based on Plaintiff's testimony.  Uncompensated work of approximately 10 minutes per day is most often considered *de minimis* and, therefore, not

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

compensable.  *See, e.g., Rutti v. Lojack Corp.*, 896 F.3d 1046, 1057-58 (9th Cir. 2010) ("No rigid rule can be applied with mathematical certainty.  Nonetheless, most courts 'have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable.'"); *Lindow*, 738 F.2d at 1062 ("Most courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable.").  *Accord E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133, 135-36 (4th Cir. 1955) (10 minutes not compensable); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949) ("obvious" that 10 minutes is *de minimis*); *Carter v. Panama Canal Co.*, 314 F. Supp. 386, 392 (D.D.C. 1970) (2 to 15 minutes is *de minimis*), *aff'd*, 463 F.2d 1289 (D.C. Cir.), *cert. denied*, 409 U.S. 1012 (1972); *Hesseltine v. Goodyear Tire & Rubber Co*., 391 F. Supp. 2d 509, 519-20 (E.D. Tex. 2005) (up to 15 minutes spent preparing for work was held to be *de minimis*); *Anderson v. Pilgrim's Pride Corp*., 147 F. Supp. 2d 556, 563-64 (E.D. Tex. 2001) (holding that 10 minutes spent cleaning and putting on safety gear was not compensable because the time was *de minimis;* "[t]he majority of courts have found daily periods of approximately 10 minutes *de minimis* as a matter of law.").

Thus, the third prong of the *Lindow* test is satisfied, because it is undisputed that Plaintiff's alleged extra time worked amounted to 10 minutes or less, which is *de minimis*, based on "the aggregate amount of compensable time."

///
///
///
///
///
///
///
///

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1

## VII.   CONCLUSION

Based on Plaintiff's own testimony, there is no triable issue as to any claim for unpaid overtime, 29 U.S.C. § 207(a)(1), and no triable issue as to any unpaid work below the federal minimum wage, 29 U.S.C. § 206(a)(1).  As a result, summary judgment should be granted.


DATED: November 8, 2010                         **SEYFARTH SHAW LLP**


By: _____/s/ Jon D. Meer_____
                  JON D. MEER
Attorneys for Defendant
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, INC.